IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| CITY OF KINGS MOUNTAIN,<br>a political subdivision of the<br>State of North Carolina,<br>101 W. Gold Street,<br>Kings Mountain, NC 28086<br><br>      Plaintiff,<br><br>      v.<br><br>ERIC HOLDER,<br>Attorney General of the<br>United States of America;<br>THOMAS E. PEREZ,<br>Assistant Attorney General,<br>Civil Rights Division, United States<br>Department of Justice, Washington, DC,<br><br>      Defendants. | FILED<br>JUL - 8 2010<br>Clerk, U.S. District & Bankruptcy<br>Courts for the District of Columbia<br><br>**Case: 1:10-cv-01153**<br>**Assigned To : Friedman, Paul L.**<br>**Assign. Date : 7/8/2010**<br>**Description: 3-Judge Court**<br><br>Three-Judge Court Requested |

COMPLAINT FOR DECLARATORY RELIEF UNDER THE VOTING RIGHTS ACT

The Plaintiff City of Kings Mountain, North Carolina, alleges that:

1. This is an action brought for declaratory relief pursuant to Section 4 of the Voting Rights Act of 1965, as amended, 42 U.S.C. §1973b (hereinafter "Section 4"). This Court has jurisdiction over this action pursuant to 28 U.S.C. §1343(a)(4), 28 U.S.C. §2201, 42 U.S.C. §1973b, and 42 U.S.C. §1973l(b).

2. Plaintiff City of Kings Mountain ("the City") is a political subdivision of the State of North Carolina and a political subdivision of a state within the meaning of Section 4(a) of the Voting Rights Act, 42 U.S.C. §1973b(a)(1).

3. The City of Kings Mountain, North Carolina, extends into two North Carolina counties (Cleveland and Gaston), and is located in the foothills of the Blue Ridge Mountains, in an area known as the Piedmont of North Carolina, between the cities of Charlotte, North Carolina and Greenville, South Carolina.

4. The City of Kings Mountain has a manager/council form of government. The Kings Mountain City Council is the policy making and legislative body of City government and includes a Mayor and seven council members. Two of the seven members are elected at-large and the remaining five council members are elected from single-member districts.

5. Aside from the City government, there are no other elected governmental units that exist completely within the City of Kings Mountain within the meaning of 42 U.S.C. §1973b(a)(1).

6. The City of Kings Mountain is a covered jurisdiction subject to the special provisions of the Voting Rights Act, including Section 5 of the Act. 42 U.S.C. §1973c. Under Section 5, the City is required to obtain preclearance from either this Court or from the Attorney General for any change in voting standards, practices, and procedures since the Act's November 1, 1964 coverage date for North Carolina.

7. Cleveland County, North Carolina, was designated as a jurisdiction subject to the special provisions of the Voting Rights Act on the basis of the determinations made by the Attorney General that North Carolina maintained a "test or device" as defined by Section 4(b) of the Act on November 1, 1964,

and by the Director of the Census that fewer than 50 percent of the persons of voting age then residing in Cleveland County voted in the 1964 presidential election. 42 U.S.C. §1973b(b).

8. As of the 2000 census, the City of Kings Mountain, North Carolina had a total population of 9,693. Of this number, 2,089 persons (22.0%) were black and 139 (1.4%) were Hispanic. The voting age population of the City, according to the 2000 census, was 7,242. Of this number, 1,354 (18.7%) were black. By 2008, the population of City of Kings Mountain was estimated by the U.S. Census Bureau to be 11,175.

9. Current data show that a significant proportion of the City's voting age population is registered to vote. As of June 2010, there were 8,567 registered voters in the City of Kings Mountain. Of this number, 1,894 (22.1%) were black. Thus, roughly 77% of the City's estimated 2008 population is registered to vote. The percentage of registered voters in Kings Mountain in 2010 who are black (22.1%) exceeds the percentage of blacks of voting age in the City (18.7%).

10. The number of registered voters in the City has grown dramatically over the last decade. In 2000, for example, there were 4,637 registered voters in the City. By 2005, the number of registered voters had grown to 7,904, and by June 2010 it was 8,567.

11. Voter turnout in elections within the City of Kings Mountain (*i.e.*, the percentage of those registered voters who actually cast ballots) varies according to the offices up for election. Turnout in the City for the 2008

Presidential election, for example, was 67.9%; and in the 2004 Presidential election, the voter turnout in Kings Mountain was 62.4%. In the Congressional elections in 2002, turnout in the City was 40.9%; in 2006 the turnout in the City for Congressional elections was 35.5%. In elections for the Kings Mountain City Council, the percentage of those registered to vote who actually turned out to vote was 23.8% in 2007 and 16.7% in 2009.

12. There are presently a total of two polling locations in Kings Mountain located conveniently to voters across the City. Both polling places in the City are accessible to voters with physical disabilities.

13. One current member of the Kings Mountain City Council is black. There has been at least one black member of the city council since 1991.

14. Since its inception in 1965, the Voting Rights Act has allowed States, which are subject to these special provisions of the Act, to exempt themselves from coverage under the Act's special remedial provisions, if they can satisfy standards established in the Voting Rights Act. This exemption process is known as "bailout".

15. In 1982, Congress made changes in the exemption standards of the Voting Rights Act. As amended in 1982, Section 4 of the Voting Rights Act provides that States, as well as political subdivisions within those States that are covered under the special provisions of the Act, are entitled to a declaratory judgment in this Court granting an exemption from the Act's special remedial provisions if, during the ten years preceding the filing of the action:

>A) no test or device has been used either for the purpose or with the effect of denying or abridging the right to vote on account of

>        race, color, or membership in a language minority group, within
>        the State or political subdivision seeking a declaratory judgment;
>        B) no final judgment has been entered by any court determining
>        that the political subdivision has denied or abridged the right to
>        vote on account of race, color, or membership in a language
>        minority group;
>        C) no Federal examiners have been assigned to the political
>        subdivision;
>        D) all governmental units within the political subdivision have
>        complied with the preclearance provisions of Section 5 of the
>        Voting Rights Act, 42 U.S.C. §1973c; and
>        E) the Attorney General has not interposed any objection to any
>        proposed voting change within the political subdivision and no
>        declaratory judgment has been denied with regard to such a
>        change by this Court under Section 5.

As amended in 1982, Section 4 of the Act also requires States and political subdivisions seeking an exemption from the Act's special provisions to show that, during the pendency of the declaratory judgment action seeking such exemption:

>        A) Any voting procedure or method of election within the state
>        or political subdivision exists which inhibits or dilutes equal
>        access to the electoral process has been eliminated;
>        B) Constructive efforts have been made by the political
>        subdivision to eliminate any intimidation or harassment of
>        persons exercising rights under the Voting Rights Act; and
>        C) Expanded opportunities for convenient registration and voting
>        exist within the State or political subdivision.

16. As described herein, plaintiff City of Kings Mountain has fully complied with the provisions of Section 4 of the Act.

17. As a political subdivision of the State of North Carolina and of Cleveland County, plaintiff City of Kings Mountain has been subject to certain special remedial provisions of the Voting Rights Act, including the provisions of Section 5 of the Act, 42 U.S.C. §1973c. Under Section 5 of the Act, known as the 'preclearance' provisions, covered jurisdictions, including the City of

5

Kings Mountain, are required to seek and obtain preclearance from either this Court or from the United States Attorney General of any change affecting voting, and such preclearance must be obtained prior to implementation.

18. In the ten years preceding the filing of this action, the City of Kings Mountain has made numerous preclearance submissions to the United States Department of Justice pursuant to Section 5 of the Voting Rights Act, 42 U.S.C. §1973c.

19. Within the ten years preceding the filing of this action, the City of Kings Mountain has only enforced one voting change prior to Section 5 preclearance (annexation of a small tract of land owned by the City which has a water treatment building on it and contains no population). The City recently obtained administrative preclearance for this change, which was not submitted previously due to inadvertence. The Attorney General has never interposed a Section 5 objection to any change affecting voting in the City of Kings Mountain since the Voting Rights Act was first enacted in 1965. The City has never sought judicial preclearance of any voting changes in this Court.

20. Voter registration opportunities in the City are readily and equally available to all citizens.

21. Voters may return registration forms to the Cleveland County Board of Elections office in the neighboring town of Shelby, which is open from 8:30 a.m. to 5:00 p.m. daily, or to any of the County's libraries.

22. Voters in the City of Kings Mountain may also register by mail, and voter registration applications are available at locations convenient to voters in the City, including many of the Cleveland County government buildings in the

neighboring town of Shelby, as well as various community colleges and high schools. Forms may also be picked up at the Kings Mountain City Hall.

23. The opportunity to become a registered voter in City of Kings Mountain is also available under the National Voter Registration Act (the "NVRA") at the Department of Motor Vehicle ("DMV") offices and at public assistance agencies in the City. While in past years most voters became registered at the County's voter registration office, the implementation of the NVRA in North Carolina over the last two decades has changed the origin of many registration applications. Today, many of the County's new registrants register through applications submitted through the DMV and by mail, and the opportunities for persons to register to vote in the City of Kings Mountain have been made more convenient and available as a result of implementation of the NVRA.

24. City residents are also allowed to register and vote in person at one-stop voting sites in Cleveland County from nineteen to three days before a general election.

25. On occasion, the African-American Caucus of the Democratic Party in Cleveland County has conducted voter registration drives at churches, high school football games, and other events.

26. Minority voters participate in all aspects of the political process in Kings Mountain. In the last general election held in Cleveland County (May 2010), for example, there were 210 poll workers, of whom 40 (or 19%) were black. In the last city council election held in Kings Mountain (May 2009), there were 44 poll workers, of whom 18 (or 41%) were black. The percentage of

black poll workers in the City (41%) is more than double the percentage of the City's black voting age population (18.7% according to the 2000 census).

27. No person in the City of Kings Mountain has been denied the right to vote on account of race, color, or membership in a language minority group for at least the preceding ten years.

28. No "test or device" as defined in the Voting Rights Act (42 U.S.C. §1973b(c)) has been used in the City of Kings Mountain as a prerequisite to either registering or voting for at least the preceding ten years.

29. No final judgment of any court of the United States has determined that denials or abridgments of the right to vote on account of race or color have occurred in the City of Kings Mountain, nor has the City entered into any consent decree, settlement or agreement resulting in any abandonment of a voting practice challenged on such grounds. There are no pending actions against the City of Kings Mountain alleging such denials or abridgments of the right to vote.

30. No voting practices or procedures have been abandoned by the City or challenged on the grounds that such practices or procedures would have either the purpose or the effect of denying the right to vote on account of race or color.

31. The Plaintiff City of Kings Mountain has not employed any voting procedures or methods of election that inhibit or dilute equal access to the electoral process by minority voters in the City. Minority voters in the City of Kings

Mountain are not being denied an equal opportunity to elect candidates of their choice to any office in the City.

32. Federal examiners have never been appointed or assigned to the City of Kings Mountain under Section 3 of the Voting Rights Act, 42 U.S.C. §1973a.

33. Because there has not been any known intimidation or harassment of persons exercising rights protected under the Voting Rights Act in the City of Kings Mountain within the last ten years, the City has not had any occasion to take any action eliminating such activity.

34. Pursuant to 42 U.S.C. §1973b, the City has "publicize[d] the intended commencement …of [this] action in the media serving [the City] and in the appropriate United States post offices."  A Notice of Intent to Seek a Bailout and of a Proposed Settlement was published in the Kings Mountain Herald, the City's weekly newspaper, on March 3, March 10, and March 17, 2010. This Notice was also posted at Kings Mountain City Hall and the Post Office, as well as the Cleveland County Courthouse, Governmental Administration Building, Department of Social Services, and Board of Elections office.

35. The proposed bailout was the subject of a public hearing at the Kings Mountain City Council in 2009. The City Council unanimously voted to proceed with the bailout following that hearing.

36. The allegations set forth in paragraphs 17 through 35, above, if established, entitle plaintiff City of Kings Mountain to a declaratory judgment under Section 4 of the Voting Rights Act, 42 U.S.C. §1973b, exempting the City and

all governmental units within the City from the special remedial provisions of the Voting Rights Act.

WHEREFORE, plaintiff City of Kings Mountain respectfully prays that this Court:

A. Convene a three-judge court, pursuant to 28 U.S.C. §2284 and 42 U.S.C. §1973b, to hear the claims raised in plaintiff's complaint;

B. Enter a declaratory judgment that plaintiff City of Kings Mountain is entitled to a bailout from the special remedial provisions of the Voting Rights Act; and

C. Grant such other relief as may be necessary and proper as the needs of justice may require.

Respectfully submitted,

**For the Plaintiff CITY OF KINGS MOUNTAIN:**

J. GERALD HEBERT
Attorney at Law
191 Somervelle Street, #405
Alexandria, Va. 22304
(703) 628-4673
DC Bar No. 447676
Email: hebert@voterlaw.com
Email: jghebert@comcast.net

CLAYWARD C. CORRY, JR.
Corry Law Firm
117 South Battleground Avenue
Kings Mountain, NC 28086
(704) 739-3696 (Office)
(704) 739-1316 (Facsimile)
www.corrylawoffice.com