IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILED
OCT 22 2010
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

CITY OF KINGS MOUNTAIN, )
a political subdivision of )
the State of North Carolina, )
)
    Plaintiff, )
)
v. ) Civil Action No. 1:10-cv-01153
) (three-judge court) PLF-DST-TFH
ERIC H. HOLDER, JR., )
Attorney General of the )
United States of America, )
)
THOMAS E. PEREZ, )
Assistant Attorney General, )
Civil Rights Division, )
)
    Defendants. )
_____ )

## CONSENT JUDGMENT AND DECREE

1.    This action was initiated on July 8, 2010, by the Plaintiff City of Kings Mountain, North Carolina ("Kings Mountain" or "the City"), against the Defendant Attorney General of the United States and the Defendant Assistant Attorney General, Civil Rights Division (collectively the "Attorney General").

2.    Kings Mountain is a governmental entity organized under the constitution and laws of the State of North Carolina. Kings Mountain straddles two counties in North Carolina: Cleveland County and Gaston County. Both Cleveland and Gaston counties are covered by the special provisions of the Voting Rights Act, including Section 5 of the Act, 42 U.S.C. § 1973c, based on a coverage determination under the first sentence of Section 4(b) made by the Attorney General and the Director of the Census, and published in the Federal Register. 30 Fed. Reg. 9897 (Aug. 7, 1965) (Attorney General's determination); 31 Fed. Reg. 5080 (Mar. 29, 1966)

1

(Director of the Census's determination). By virtue of this coverage determination, Cleveland and Gaston counties, and all of their political subdivisions, including the City of Kings Mountain, must receive preclearance under Section 5 of the Act for all changes enacted or implemented after November 1, 1964 that affect voting.

3. Through this action, the City seeks a declaratory judgment pursuant to the first sentence of the "bailout" provisions of Section 4(a)(1) of the Voting Rights Act, 42 U.S.C. § 1973b(a)(1), declaring it exempt from coverage under Section 4(b) of the Act, 42 U.S.C. 1973b(b). Bailout also exempts the jurisdiction from being subject to the preclearance provisions of Section 5 of the Act, 42 U.S.C. § 1973c.

4. This three-judge district Court has been convened as provided in 42 U.S.C. § 1973b(a)(5) and 28 U.S.C. § 2284 and has jurisdiction over this matter.

5. Section 4(a) of the Voting Rights Act provides that a political subdivision subject to the special provisions of the Act may be exempted or "bailed out" from those provisions through an action for a declaratory judgment before this Court if it can demonstrate fulfillment of the specific statutory conditions in Section 4(a) for both the ten years preceding the filing of the action, and throughout the pendency of the action. The statutory conditions the City must satisfy are as follows:

> (A) no such test or device has been used within such State or political subdivision for the purpose or with the effect of denying or abridging the right to vote on account of race or color or (in the case of a State or subdivision seeking a declaratory judgment under the second sentence of this subsection) in contravention of the guarantees of subsection (f)(2) of this section (42 U.S.C. § 1973b(a)(1)(A));
>
> (B) no final judgment of any court of the United States, other than the denial of declaratory judgment under this section, has determined that denials or abridgements of the right to vote on account of race or color have occurred anywhere in the territory of such State or political subdivision or (in the case of a State or subdivision seeking a declaratory judgment under the second sentence of

this subsection) that denials or abridgements of the right to vote in contravention of the guarantees of subsection (f)(2) of this section have occurred anywhere in the territory of such State or subdivision and no consent decree, settlement, or agreement has been entered into resulting in any abandonment of a voting practice challenged on such grounds; and no declaratory judgment under this section shall be entered during the pendency of an action commenced before the filing of an action under this section and alleging such denials or abridgements of the right to vote (42 U.S.C. § 1973b(a)(1)(B));

(C) no Federal examiners or observers under subchapters I-A to I-C of this chapter have been assigned to such State or political subdivision (42 U.S.C. § 1973b(a)(1)(C));

(D) such State or political subdivision and all governmental units within its territory have complied with section 1973c of this title, including compliance with the requirement that no change covered by section 1973c of this title has been enforced without preclearance under section 1973c of this title, and have repealed all changes covered by section 1973c of this title to which the Attorney General has successfully objected or as to which the United States District Court for the District of Columbia has denied a declaratory judgment (42 U.S.C. § 1973b(a)(1)(D));

(E) the Attorney General has not interposed any objection (that has not been overturned by a final judgment of a court) and no declaratory judgment has been denied under section 1973c of this title, with respect to any submission by or on behalf of the plaintiff or any governmental unit within its territory under section 1973c of this title, and no such submissions or declaratory judgment actions are pending (42 U.S.C. § 1973b(a)(1)(E)); and

(F) such State or political subdivision and all governmental units within its territory-- (i) have eliminated voting procedures and methods of election which inhibit or dilute equal access to the electoral process; (ii) have engaged in constructive efforts to eliminate intimidation and harassment of persons exercising rights protected under subchapters I-A to I-C of this chapter; and (iii) have engaged in other constructive efforts, such as expanded opportunity for convenient registration and voting for every person of voting age and the appointment of minority persons as election officials throughout the jurisdiction and at all stages of the election and registration process. (42 U.S.C. § 1973b(a)(1)(F)(i-iii)).

6. Section 4(a) also provides the following additional requirements to obtain bailout:

To assist the court in determining whether to issue a declaratory judgment under this subsection, the plaintiff shall present evidence of minority participation, including evidence of the levels of minority group registration and voting,

3

changes in such levels over time, and disparities between minority-group and non-minority-group participation. (42 U.S.C. § 1973b(a)(2));

No declaratory judgment shall issue under this subsection with respect to such State or political subdivision if such plaintiff and governmental units within its territory have, during the period beginning ten years before the date the judgment is issued, engaged in violations of any provision of the Constitution or laws of the United States or any State or political subdivision with respect to discrimination in voting on account of race or color or (in the case of a State or subdivision seeking a declaratory judgment under the second sentence of this subsection) in contravention of the guarantees of subsection (f)(2) of this section unless the plaintiff establishes that any such violations were trivial, were promptly corrected, and were not repeated. (42 U.S.C. § 1973b(a)(3));

The State or political subdivision bringing such action shall publicize the intended commencement and any proposed settlement of such action in the media serving such State or political subdivision and in appropriate United States post offices. (42 U.S.C. § 1973b(a)(4)).

7. Finally, Section 4(a)(9) provides that the Attorney General can consent to entry of a declaratory judgment granting bailout "if based upon a showing of objective and compelling evidence by the plaintiff, and upon investigation, he is satisfied that the State or political subdivision has complied with the requirements of [Section 4(a)(1)] . . . ."

8. The Attorney General has conducted a comprehensive and independent investigation to determine the City's entitlement to bailout. In so doing, he has, among other things, interviewed members of the local minority community, and reviewed a significant number of documents related to the City, including available background information and demographic data, minutes of the Kings Mountain City Council, records relating to voter registration and turnout in the City, and records of the City's preclearance submissions.

9.. The Attorney General and Kings Mountain agree that the City has fulfilled the conditions required by Section 4(a) and is entitled to the requested declaratory judgment allowing it to bail out of Section 5 coverage. Accordingly, the City and the Attorney General have filed a Joint Motion for Entry of this Consent Judgment and Decree.

4

## AGREED FACTUAL FINDINGS

10. Kings Mountain is located in both Cleveland County, North Carolina and Gaston County, North Carolina.

11. There are no governmental subdivisions located within Kings Mountain. The City's School Board was consolidated with the Cleveland County School Board in 2003. Students from Kings Mountain now attend public schools administered by the county in which they reside, which is either Cleveland County or Gaston County. The City's Board of Elections was dissolved in 1996 pursuant to state law, and its functions assumed by the Cleveland County Board of Elections.

12. The City reported a 2000 Census population of 9,693 persons, of whom 2,105 (21.7%) are black and 139 (1.4%) are Hispanic. The total voting age population, according to the 2000 Census, is 7,242 persons, of whom 1,345 (18.6%) are black and 88 (1.2%) are Hispanic. Since the 2000 Census was compiled, the City has annexed additional land. Based on 2000 Census data, these annexations have added approximately 705 people to the City's population, for a total population of 10,398. Based on 2000 Census data, it is estimated that the expanded city has a voting age population of 7,783, of whom 1,558 (20%) are black and 102 (1.3%) are Hispanic.

13. Kings Mountain is governed by a seven-member city council and a mayor. Five of the city council members are elected from single-member districts, called Wards, and two members are elected at large. The mayor is also elected at large. The mayor and city council members are elected to four year terms under a non-partisan plurality system of election. Elections are staggered so that three council members run for election every two years. Municipal elections are held in November of odd numbered years.

14. The City adopted its current method of election for city council members in 1991 after receiving preclearance from the Attorney General. Prior to 1991, the city council consisted of six members who were all elected at-large. No minority candidate had ever been elected to the city council under the prior at-large method of election. Since the current single-member district method of election was adopted in 1991, majority-black Ward 1 has consistently elected a black city councilperson in each municipal election. No minority candidate has ever been elected to any position in Kings Mountain other than Ward 1 city council.

15. The minority population in Kings Mountain is concentrated in Ward 1. This is reflected in the racial composition of each Ward, which contained the following populations as of 2000: Ward 1 had a total voting-age population of 1,296, of whom 686 (52.93%) are black; Ward 2 had a total voting-age population of 1,526, of whom 176 (11.53%) are black; Ward 3 had a total voting-age population of 1,327, of whom 190 (14.32%) are black; Ward 4 had a total voting-age population of 1,496, of whom 120 (8.0%) are black; and Ward 5 had a total voting-age population of 1,597, of whom 173 (10.83%) are black.

16. Kings Mountain abolished its Municipal Board of Elections in 1996, as required by state law. N.C. Stat. § 163-280.1. Since that time, Cleveland County has administered all of the City's elections pursuant to an agreement with the City and Gaston County. Under this agreement, Kings Mountain voters who reside in the part of the City located in Gaston County travel to Cleveland County to vote in City elections. The City has no role in conducting elections or registering voters.

17. Cleveland County has a three-member Board of Elections that is overseen by a Director and Deputy Director. The members of the County Board of Elections are appointed to two-year terms by the State Board of Elections. Pursuant to state law, the political parties within

the County nominate individuals to serve on the Board, and no more than two of the Board's members may be of the same political party. Of the current Board members for Cleveland County, two are white and one is black.

18. State law also tasks the County's political parties with nominating poll workers, who are then appointed by the County Board of Elections. N.C.G.S. § 163-41. There are two election judges and one chief judge appointed for each polling place, and all serve two year terms. Under state law, no more than one of the election judges may be of the same political affiliation as the chief judge. Additionally, two individuals are hired to work as paperwork assistants at each polling place. For each election, the chief judge also is permitted to hire assistants, who have similar duties as the election judges. The number of assistants the chief judge may hire is set by the Board of Elections and varies with each election. The Board of Elections provides the chief election judges with a memo of instructions that recommends recruiting a racially diverse group of election assistants.

19. If the political parties do not nominate sufficient numbers of eligible individuals to fill all of the election judge positions, the Board of Elections must select the remaining election judges by unanimous vote. The Board of Elections has never refused to appoint anyone who has expressed interest in becoming an election judge. When the Board of Elections recruits election judges, they undertake efforts to appoint a racially diverse set of judges. To staff the Kings Mountain precincts for elections over the last ten years, the County hired 346 election judges and paperwork assistants, of whom 54, or approximately 15.6% percent, were black. In more recent years the percentage of black poll workers has increased. For instance, for the 2008 general election, 4 out of 20 poll workers hired for Kings Mountain—20%—were black, including one chief judge, one election judge, and two paperwork assistants. For the 2009 to

7

2011 appointment period, 4 out of the 19 poll workers hired for Kings Mountain—approximately 21%— are black, including one chief judge, one election judge, and two paperwork assistants.

20. Throughout the last ten years, black voter registration in Kings Mountain has remained at a consistent level that is in proportion to the City's demographics. Data available through Cleveland County shows that in October 1999, there were 8,411 registered voters in Kings Mountain, of which 1,772 (21%) were black. In November 2009, there were 6,027 voters registered in Kings Mountain, of which 1,290 (21.4%) are black. This is similar to the overall demographics of the City, as the black voting age population in Kings Mountain is 20% of the City's total voting age population. Comparison of available voter registration data and Census data indicates that black persons of voting age in Kings Mountain have been registered to vote at higher rates than white persons of voting age at various points in the last decade (2009, 2006, 2004 and 2002). For example, as of November 2009, 82.8 percent of the black voting age population in Kings Mountain was registered to vote, compared to 76.1 percent of the white voting age population.

21. The overall rate of turnout for voters in Kings Mountain has varied depending on the type of elections. The overall rate of turnout by all voters in Kings Mountain precincts in recent November municipal elections as is follows: 2003 (23.4%), 2005 (25%), 2007 (23.8%), and 2009 (16.7%). By comparison, the overall rate of turnout by all voters in Kings Mountain precincts in recent November federal elections has been as follows: 2002 (40.9%), 2004 (62.5%), 2006 (35.5%), and 2008 (67.8%). Available data indicates that black voter turnout is proportionate to the City's demographics. In the 2008 general election black voter turnout comprised 24.6% of total turnout in the City. Similarly, in the 2006 general election, black voter turnout comprised 25.2% of total turnout in the City. In each of these elections, the black rate of

voter turnout was higher than the City's black voting age percentage (20%) and the City's black voter registration percentage (21.4%).

22. North Carolina has a unitary system of voter registration, wherein someone can register to vote once to vote in all elections, federal, state, municipal and special. Kings Mountain residents may register to vote at any location within Cleveland County that offers voter registration. Voter registration is available in Cleveland County at the County Board of Elections office, which is open 8:00 a.m. to 5:00 p.m. Monday through Friday. Voter registration is also available at various other offices that provide services and assistance within the County, at city and town halls, at public libraries, at four high schools, and at the offices of the political parties in the City of Shelby. In Kings Mountain specifically, voter registration is available at city hall, at Kings Mountain High School, at the public library in Kings Mountain, and at the U.S. Post Office located within the City. Voter registration is also available by mail-in application.

23. Additionally, a "One-Stop Absentee Voting Site" is available at the Cleveland County Board of Elections Office in Shelby, North Carolina between 19 and 3 days prior to election day. Residents who miss the regular voter registration deadline may register and vote at the Site during that period. Under state law, One-Stop Absentee Voting also serves as a system of in person absentee voting for residents who are already registered voters. Kings Mountain voters who want to take advantage of the Absentee Voting Site for late registration and early voting can travel to the Cleveland County Board of Elections Office in Shelby, which is approximately 14 miles away from Kings Mountain.

24. For purposes of voting on election day, there are currently two voting precincts in Kings Mountain. There is one polling place located in each voting precinct. Both polling places

are centrally located in buildings open to the public and accessible to disabled voters: one polling place is in the City's public library and one is in a YMCA building in Kings Mountain. Until recently the City was divided into four voting precincts, but a permanent consolidation of the four precincts into two precincts was pre-cleared by the Attorney General on April 5, 2010, following submission of this change by Cleveland County.

25. Kings Mountain has made 54 submissions to the Attorney General under Section 5 of the Voting Rights Act since 1983. During the period covering the ten years preceding this action, and during the pendency of this action, the City has made 24 submissions under Section 5 to the Attorney General, and the Attorney General has not interposed an objection to any of these submissions. The Attorney General reviewed the elections records of Kings Mountain in the course of considering the City's bailout request, and the only matters found that were not reflected in the City's submissions to the Attorney General were two older previously unsubmitted annexations that consisted of uninhabited and uninhabitable land. The City submitted these annexations for review under Section 5, and the Attorney General interposed no objection. Hence, the Attorney General's investigation indicates that the City has not enforced any changes that had any actual effect on voting in elections prior to receiving preclearance during the previous ten years and during the pendency of this action.

26. The City publicized the intended commencement of this action in the manner required by Section 4(a)(4) of the Act prior to its being filed. The City issued a press release through its attorney on August 4, 2009 concerning its intent to bail out. The City also published a notice of the bailout for three consecutive weeks starting March 4, 2010 in the <u>Kings Mountain Herald</u>, the local newspaper in the City. Additionally, the City posted notices in the U.S. Post Office in Kings Mountain, the Kings Mountain City Hall, the Cleveland County courthouse in

Shelby, North Carolina, the Cleveland County Government Administration Building in Shelby, the Cleveland County Department of Social Services office in Shelby, and the Cleveland County Board of Elections Office in Shelby. The notice advertised that the City was seeking to bail out from the special provisions of the Voting Rights Act, and directed any person desiring additional information to contact the City's attorney. The City has publicized notice of this proposed settlement, simultaneously with the filing of the Joint Motion for Entry of Consent Judgment and Decree, as required by Section 4(a)(4).

27. The Attorney General has determined that it is appropriate to consent to a declaratory judgment allowing bailout by the City, pursuant to Section 4(a)(9) of the Voting Rights Act. The Attorney General's consent in this action is based upon its own independent factual investigation of the City's fulfillment of all of the bailout criteria, and consideration of all of the circumstances of this case, including the views of minority citizens in the City and surrounding areas, and the absence of racial discrimination in the electoral process within the City. This consent is premised on an understanding that Congress intended Section 4(a)(9) to permit bailout in those cases where the Attorney General is satisfied that the statutory objectives of encouraging Section 5 compliance, and preventing the use of racially discriminatory voting practices, would not be compromised by such consent.

### AGREED FINDINGS ON STATUTORY BAILOUT CRITERIA

28. The City is a covered jurisdiction subject to the special provisions of the Voting Rights Act, including Section 5 of the Act, 42 U.S.C. § 1973c. Under Section 5 of the Act, the City is required to obtain preclearance from either this Court or from the Attorney General for any change in voting standards, practices, and procedures adopted or implemented since the Act's coverage date. The only entity seeking bailout through this action is the City. Neither Cleveland

County nor Gaston County nor any of the other political subdivisions in either of these Counties are seeking bailout, other than the City. The City is a political subdivision entitled to seek bailout from this Court for itself and by itself under Section 4(a). *Northwest Austin Municipal Utility Dist. No. One v. Holder*, 129 S. Ct. 2504, 2516 (2009) ("We therefore hold that all political subdivisions ... are eligible to file a bailout suit"). There are no other governmental subdivisions within the City's territory for which it is responsible or which must request bailout at the same time as the City, within the meaning of Section 4(a), 42 U.S.C. § 1973b(a).

29. During the ten years preceding the filing of this action and during the pendency of this action, there has been no test or device as defined in Section 4(c) of the Voting Rights Act used within the City for the purpose or with the effect of denying or abridging the right to vote on account of race or color. During the relevant time period there is also no indication that any person in Kings Mountain has been denied the right to vote on account of race or color. 42 U.S.C. § 1973b(a)(1)(A).

30. During the ten years preceding the filing of this action, and during the pendency of this action, no final judgment of any court of the United States has determined that denials or abridgments of the right to vote on account of race or color have occurred anywhere within the territory of Kings Mountain. Further, no consent decree, settlement, or agreement has been entered into resulting in any abandonment of a voting practice challenged on such grounds. No action is presently pending alleging such denials or abridgements of the right to vote. 42 U.S.C. § 1973b(a)(1)(B).

31. During the ten years preceding the filing of this action, and during the pendency of this action, no Federal examiners or observers have been assigned to Kings Mountain. 42 U.S.C. § 1973b(a)(1)(C).

32. During the ten years preceding this action, and during the pendency of this action, the City made 24 administrative submissions to the Attorney General for review under Section 5, and the Attorney General did not object to any of these submissions, and there is no evidence that the City enforced any changes that had an actual effect on voting in elections prior to receiving preclearance under Section 5. 42 U.S.C. § 1973b(a)(1)(D).

33. During the ten years preceding the filing of this action, and during the pendency of this action, there has been no need for the City to repeal any voting changes to which the Attorney General has objected, or to which this Court has denied a declaratory judgment, since no such objection or denials have occurred. 42 U.S.C. § 1973b(a)(1)(D).

34. During the ten years preceding this action, and during the pendency of this action, the Attorney General has not interposed any objection to voting changes submitted by or on behalf of the City for administrative review under Section 5. No such administrative submissions by or on behalf of the City are presently pending before the Attorney General. The City has never sought judicial preclearance from this Court under Section 5. Thus, this Court has never denied Kings Mountain a declaratory judgment under Section 5, nor are any such declaratory judgment actions now pending. 42 U.S.C. § 1973b(a)(1)(E).

35. During the ten years preceding the filing of this action, and during the pendency of this action, Kings Mountain has not employed methods of election which inhibit or dilute equal access to the electoral process. Cleveland County conducts the City's elections, and during the relevant time period there is no evidence that elections in the City have employed voting procedures that inhibit or dilute equal access to the electoral process. 42 U.S.C. § 1973b(a)(1)(F)(i).

13

36. During the ten years preceding the filing of this action, and during the pendency of this action, there is no evidence that anyone participating in the City's elections has been subject to intimidation or harassment in the course of exercising his or her rights protected under the Voting Rights Act. Constructive steps have been undertaken by Cleveland County to avoid intimidation or harassment in Kings Mountain elections, such as by recruiting a diverse group of poll officials for the municipal elections in the City. 42 U.S.C. § 1973b(a)(1)(F)(ii).

37. All voter registration and all City elections have been conducted solely by Cleveland County throughout the ten years preceding the filing of this action and through the present time. There is evidence of other constructive efforts, such as expanded opportunity for convenient registration and voting for every person of voting age and the appointment of minority persons as election officials throughout the jurisdiction and at all stages of the election and registration process. Over the last ten years voter registration levels by black voters have been consistently high, turnout by black voters is proportionate to the black voting age population, and, in recent years, the percentage of black poll workers is the same or higher than that of the black voting age population. See 42 U.S.C. § 1973b(a)(1)(F)(iii).

38. Cleveland County conducts the City's elections, and conducts voter registration for the City. The City has presented evidence of minority participation, including evidence of the levels of minority group registration and voting, changes in such levels over time, and disparities between minority-group and non-minority-group participation. Available data from Cleveland County, the State of North Carolina, and the U.S. Census indicates that the overall level of black voter registration in Kings Mountain is high, and voter registration and turnout by black voters is consistent with the demographics of the City's voting age population. 42 U.S.C. § 1973b(a)(2).

14

39. During the ten years preceding the filing of this action, and during the pendency of this action, the City has not engaged in violations of any provision of the Constitution or laws of the United States or any State or political subdivision with respect to discrimination in voting on account of race or color. 42 U.S.C. § 1973b(a)(3).

40. Kings Mountain has provided public notice of its intent to seek a Section 4(a) declaratory judgment. The City issued a press release through its attorney on August 4, 2009 concerning its intent to bail out. The City also published a notice of the bailout for three consecutive weeks starting March 4, 2010 in the <u>Kings Mountain Herald</u>, the local newspaper in the City. Additionally, the City posted notices in the U.S. Post Office in Kings Mountain and at other locations in Kings Mountain and/or Cleveland County. The City has publicized a notice of the proposed settlement of this action, simultaneously with the filing of the Joint Motion for Entry of Consent Judgment and Decree, as required by Section 4(a)(4). 42 U.S.C. § 1973b(a)(4).

Accordingly, it is hereby ORDERED, ADJUDGED and DECREED:

1. The plaintiff City of Kings Mountain is entitled to a declaratory judgment in accordance with the first sentence of Section 4(a)(1) of the Voting Rights Act, 42 U.S.C. § 1973b(a)(1).

2. The parties' Joint Motion for Entry of Consent Judgment and Decree is GRANTED, and the plaintiff City of Kings Mountain is exempted from coverage pursuant to the first sentence of Section 4(b) of the Voting Rights Act, 42 U.S.C. § 1973b(b), provided that this Court shall retain jurisdiction over this matter for a period of ten years pursuant to Section 4(a)(5), 42 U.S.C. § 1973b(a)(5). This action shall be closed and placed on this Court's inactive docket, subject to being reactivated upon application by either the Attorney General or any aggrieved person in accordance with the procedures set forth in Section 4(a)(5), 42 U.S.C. § 1973b(a)(5).

Entered this 27#sup#nd#/sup# day of October, 2010.

_____
UNITED STATES CIRCUIT JUDGE

_____
UNITED STATES DISTRICT JUDGE

_____
UNITED STATES DISTRICT JUDGE

*Agreed and Consented To:*

/s/ J. Gerald Hebert
J. Gerald Hebert
D.C. Bar No. 447676
191 Somervelle Street, #405
Alexandria, VA 22304
Telephone: (703) 628-4673
hebert@voterlaw.com

/s/ Clayward C. Corry, Jr.
Clayward C. Corry, Jr.
Corry Law Firm
117 South Battleground Avenue
Kings Mountain, NC 28086
Telephone: (704) 739-3696
Facsimile: (704) 739-1316

*Counsel for Plaintiff*
*City of Kings Mountain, North Carolina*

Dated: September 21, 2010

*Agreed and Consented To:*

THOMAS E. PEREZ
Assistant Attorney General
Civil Rights Division

RONALD C. MACHEN, JR.
United States Attorney


/s/ Risa Berkower
T. CHRISTIAN HERREN, JR.
BRIAN F. HEFFERNAN
brian.f.heffernen@usdoj.gov
RISA BERKOWER
risa.berkower@usdoj.gov
Attorneys, Voting Section
Civil Rights Division
U.S. Department of Justice
Room 7254 NWB
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530
Telephone: (800) 253-3931
Facsimile: (202) 307-3961

*Counsel for Defendants*
*Eric H. Holder, Jr.*
*Attorney General of the United States*
*and Thomas E. Perez,*
*Assistant Attorney General*
*Civil Rights Division*

Dated: September 21, 2010